The next case today is United States v. Juan Guerrero, appeal number 21-1244. Attorney Zurier, please introduce yourself for the record and proceed with your argument. May it please the court, Lauren Zurier for the United States. I'd like to reserve two minutes for rebuttal if I may. Good morning, and you may. Thank you. Your Honor, this case raises a narrow but significant issue regarding the in the wake of Wren v. United States and other applicable Supreme Court precedent. In this case, the district court applying Lott invalidated what it held was a reasonable protective sweep of a vehicle for weapons because, in the court's view, the officers who had conducted the search did not subjectively exhibit concern for their safety while they conducted the search. This court has considered the viability of Lott after Wren... Well, what's on appeal is the denial of a motion for reconsideration. And a denial of the, and the grant of the motion for summary judgment as indicated in the amended order that was issued the same day as the denial of motion for reconsideration. This, we appealed both. And the second issue wasn't raised until you filed a motion for reconsideration. The viability of Lott wasn't raised until we filed the motion for reconsideration. In the government's view, and as the court indicated in denying the motion for reconsideration, it would not have changed anything had the government raised it first. This is purely a Unlike the cases that my brother has cited in his brief, this case doesn't involve an issue that would have been changed had we raised the issue earlier. The result would have been identical. Does that leave you of the responsibility of raising it? I would suggest that in this court's exception to the waiver doctrine, when there is controlling precedent that the party can challenge only by raising it in this court, the court, the party is not foreclosed from raising that challenge if it has not raised the issue before the lower court decided the initial motion. And that Montreal versus Maine, the appellant had conceded the issue and then raised the challenge, the precedent on appeal in this court went on to consider it. And in Lopez, the appellant had cited and raised and cited the fact that there might be a doubt as to the viability of the precedent, but didn't squarely challenge it until it got on to appeal. So I would say that under that line of cases, this issue is squarely and properly presented on the merits. And unlike the other cases in which this court has declined to address the merits of the challenge, this case doesn't involve any further fact-finding. It is a dispositive issue. The issue is squarely presented on the facts. There's no other alternative that the government has for having this court consider lot. And as I've outlined in our brief and in our reply brief, I think that this does fit within the exceptions that this court has recognized to the waiver doctrine. But the next barrier or potential barrier to any party seeking to challenge a controlling precedent is the law of the circuit doctrine. And that I would suggest is why a party doesn't seek to challenge controlling precedent on appeal very often, despite this court's exception for that purpose. Because the law of the circuit doctrine makes it very difficult for a party to challenge existing precedent, unless it can fit within one of two narrow exceptions. And here the government has asserted that one of those exceptions applies. And that exception, if Supreme Court precedent exists, which was not considered by the panel that decided the original decision, here, the 1989 panel in Lott, and that precedent can be considered by the court, despite the law of the circuit doctrine, if it's sufficiently persuasive that it is likely that the original panel would have changed its collective mind. And I think, given the cases that have arisen since Lott, most recently McGregor, in which this court said that it's an open question whether Wren undermines Lott's viability, I would suggest that precedent is persuasive and does allow us to fall within the exception to the law of the circuit doctrine. And I would add to Wren, which held that subjectivity doesn't have a place in this area of Fourth Amendment analysis, I would add to that Bowie versus, or to protective sweeps of houses. And in that case, it held that subjectivity doesn't matter. The officer who conducted the sweep in Bowie was not subjectively afraid. That's in the court, Judge Stevens' concurrence. And yet the court held that it was a reasonably objective search and was valid. And when this court has applied Bowie, in Winston, in Lawlor, this court has explicitly held that under the objective test that Bowie uses, an officer's subjective concerns or conduct doesn't matter if the search is objectively reasonable. And the government has been unable to come up with a principled distinction between protective searches in houses and protective searches in cars. And I would suggest my brother has not either. His assertion is that under the community caretaking doctrine, there is a distinction between searches in cars and searches of houses, warrantless searches. And that may well be. Katie and Coniglia both say there is such a distinction. But they also make clear that the community caretaking exception has no application to a search under law, to one of the recognized exceptions to the warrant requirement. So I would suggest that the application of those two cases make it clear that while Lott had viability before Wren, after Wren, it has been eroded time and time again. And at this point, it makes no sense. Because the outcome of applying Lott in this case is that you have a search that was done properly, where the officers stayed within the bounds of the law, only to find out a couple years after they conducted the search that because the trial judge didn't agree or didn't find credible their testimony that they were concerned while they conducted the search, that the search itself was invalid. Was the search of the trunk appropriate? The search of the trunk was appropriate because it didn't happen until after they had found ammunition in the car, and in the government's view, and the court conceded it was arguable that it was correct, that that gave rise to probable cause that there might be a weapon in the trunk. But the search that's being challenged here is the sweep of the actual compartment. And the court held below that that was a reasonable sweep, an objectively reasonable sweep under Long, given the circumstances confronting those officers at the time they decided to sweep. I would also suggest that once any set of officers reasonably and objectively believes that they have valid concerns that justify a protective sweep under Long, the manner in which they conduct that search should not be used to undercut the validity of their decision to search. And that's what happened here. Once police are executing a search, they do so with professionalism. I would suggest they have sort of a law enforcement muscle memory. They know what they have to do. And the fact that they may have acted professionally and not shown a great deal of stress while they conducted the search says nothing about the validity of their decision to conduct the search in the first place, which is what is at issue under Michigan versus Long. Similarly, in the Winston case, this court held that how the police conducted the sweep of the house and that this court wasn't in the business of second guessing how law enforcement conducts the sweeps. There's nothing alleged in this case that the search itself was conducted in any kind of illegal manner. The only thing that's considered that invalidated it was the district court's determination that he didn't agree that the officers were concerned for their safety. Yes. You say that the search was objectively reasonable. We're not bound by the district court's finding to that effect, so we have to pay some attention to it. Yes. Was there evidence that they were going to let the 16-year-old back into the car? At the time, the officers decided to conduct the search. They didn't know that the passenger was 16. They didn't know what his status was. They conducted the search and then afterwards determined to let him go. I don't think at the time of the search they knew whether he had access to the car, had keys or not, but I would note that Michigan versus Long says that they don't have to make that kind of advanced investigation before they decide that a sweep is appropriate, as long as they hadn't already placed him under arrest under Gantt and as long as there was no indication that there might be evidence of a crime for which he was being arrested, also that would have allowed a search under Gantt. They had the right at the time they commenced the search. They had the right at the time. At what point was the passenger not under control? Control isn't the determining test, Your Honor. Long says in the case law in light of Long says that as long as it is possible... Aren't they assessing the risk that someone could retrieve a gun? Why wouldn't control be part of that analysis? The test under Long is that the officers have the right to temporarily remove the passenger and the driver from the car and detain them away from the area of the car while they conduct the sweep to ensure that there's no weapons that might endanger their safety. If there's a possibility, not a conclusion, but a possibility that those people might be let go and either have access to the car. Here he could have gone and asked to get some personal property out of the car before he was taken home or that he could have driven off. At the time they decided to conduct the sweep, they didn't know any of that and they weren't required to find out any of that. So under Long, the scope of this search and the decision to search was reasonable as the lower court held. So the end result of continuing to apply law given the... How could a police officer then just not rely on hypothetical, the hypothetical what if? You're saying that they don't have to conduct an investigation. They don't have to... Hang on, but you're talking about them not asking the passenger's age. It was clear that they were going to arrest the driver. In order to allow the passenger near the car to drive, to possibly drive it away, they would have had to conduct some kind of inquiry as to whether the person even had a driver's license. The police aren't going to turn a car over to an unlicensed driver. That's quite true, but... So you're saying that the only thing that is needed is a hypothetical possibility that someone might escape their control? Counsel, that's time. You may answer. Thank you. What Long says is they don't have to ask those questions first. They have the right to search first and ask the questions after to ensure their safety. Because what happens if they had asked the passenger that he had had a driver's license or that he did have personal property in the car and he asked to go back in the car and there was something dangerous there? That's why Long says, and it says it quite clearly that, and it rejects the argument that the police had an obligation to take less intrusive means of determining whether the possibility that the passenger was allowed to go back to the car existed. Once they determined that there was a reasonable suspicion that there might be a weapon in the car, they had the right to do a sweep of the car. And even though the court below found that the possibility wasn't a strong likelihood, at the time the police made that determination, it was a possibility and therefore valid under Long. And for those reasons, I'd ask the court to overrule the subjective prong of the lot test and vacate the grant of the motion to suppress. Thank you. Thank you, Counselor. Attorney Caesarea, thank you. Please mute your audio and video. Attorney West, please unmute your audio and video and proceed with your argument. Good afternoon. May it please the court. Good afternoon, Mr. West. Thank you, Your Honor. Your Honor, I represent Juan Guillero, the appellee in this matter. Before the court, first off, Your Honor, this matter was not raised, Your Honor, this matter was not raised in the lower court. Contrary, the government put on copious amounts of evidence as to the subjective prong. The fact that the body cam video sets this case up in a high relief of my lot is important. It's a technological leap from the cases that considered the parameters of what's going to be allowed in a vehicle search because the court has a front row seat. And it's obvious from the lower court's opinion in this case that it was very persuaded by the perceptions that the court was able to view in real time with the sharpness and clarity of the video and audio in these cases. So it is not the court superimposing from afar second-guessing. It's viewing the actual live evidence right in front of it of what's transpiring. And in that context, the court found that it was not persuaded that the officers were proceeding from the point of view of personal fear. You said the court didn't consider this issue below. I thought the court brought up the issue in final closing argument and then a motion was filed that the court accepted by the government discussing this issue. Your Honor, I didn't mean to say that the judge didn't consider it. I meant to say that the government didn't argue that Lott should be overturned in the district court level. In fact, Lott was raised at page 35 and 36. Lott and me were argued to the district judge by the defense counsel and referred to by the court later in that, I think it's in third page 37 of that transcript. The judge made specific note of it and the judge went on to ask the government whether subjective intent was an issue that should be relevant. He invited an argument on that to which the government expressed that it felt that it had met the subjective test requirement almost to the point of admitting that that was such a test. And it was conceding that they had, or it was arguing that they had met it. And that's also in that area of the oral argument, page 37, that that can be found. So I think that just to answer your question, this issue was put before the court. Lott was known to be the case law that was relevant. And at no point in time was there an attack on Lott made before the district judge until the motion for reconsideration. And that is the point in time when the attack was made on the premise that it would have been pointless to advise a district court judge that the precedent that was being discussed couldn't be relied on because it had been overturned by rent. Now, for 25 years, the court has never come to that conclusion. So I'm struck by how that could be to be a clear and controlling or a clear wall of certain authority, if you will. There was no point in time where this court, and it's had several opportunities to do so, and it's never discussed it in my view of the cases like McGregor and Worth and and the others. At no point in time has it seriously criticized its view that there has to be more to the long analysis and that this court has fashioned that more as being a subjective intention of the police officer during the time of the search. And it's clear in this case that the subjective intent, as found with the district court, went well beyond the search for weapons for personal protection. And the court did an analysis and has cited, and this court has the video, all the events that occurred where, for example, the passenger was scrutinized and searched in his pockets and clothing to the extent the defendant was. Officers left one side of the car to go to another side of the car. The fear element was just not perceived by the court by virtue of watching this go on. They point raised with the government. The court did engage the government in a discussion on oral arguments of the motions of the press about the juvenile, and the government conceded it didn't put on evidence answering those questions that this court just posed to the government counsel. They could have, but they didn't. It's clear that Mr. Guerrero was put the scene and so was the juvenile. So the court's not wrong in analyzing that the risk of seizure of a weapon at that point in time could have occurred. The court was right in making that decision. There was no risk of seizure at that point in time. What was happening in the court's impression in watching the video, especially entry into the trunk, was a search for weapons for the crime that was alleged to have occurred at the armor mat with the firing and firing in that location. The defendant, Guerrero, was not arrested for that ostensibly at the scene. He was under arrest for eluding police and resisting arrest. So pursuing evidence for the two crimes for which he was arrested, there wouldn't be physical evidence of that. So you're left with just the protective sweep going too far, which is what the district court said. My analysis, I don't think that the government has really briefed or responded to why they should be allowed to heal or continue with this argument after the motion for reconsideration has been denied. I think that I've briefed that issue, and I don't think they've even answered that in terms of the idea that a manifest error has occurred. And then even if that were to be the case, I think that if the court allowed plain error review in this case, there's no way the government can establish that there's an obvious error. The last discussion this court had of Lott was in Warth, I believe, which I believe is a 2017 case, and Wren was not even discussed. So there was no alert to the district court that a change in Lott was imminent or that it shouldn't follow Lott. So there was no obvious error, that's my point, and that plain error review should fail on that basis. Would the prior panel have collectively changed its mind? I don't think so. I don't think Wren would have proposed a situation where this panel would part company with its finding that there had to be more, that police cannot just assert on a hypothetical or a cookie-cutter basis. And on this point, I've reviewed each surrogate case the government has submitted in support of its arguments, and I have found in each one of them there's a substantial inquiry beyond the proposition that we were chasing someone and we were in fear of, we had objective fear that he had a weapon. In each one, there's some kind of inquiry into the totality of the circumstances. There are several cases that make the remark that we cannot accept just the blanket policy that if this objective case exists, therefore you have part launch to search as a protective speech. No, that would be going to Belton, and Gant seriously reined in Belton. And I think that those things are very important. The district court, the Gant-type reasoning, even though it's not explicitly on the issue of protective speech, I think it provides the context to the original jurisprudence of lot that suggests that something more, some subjective intent has to be looked in. And to shut down that level of inquiry on police conduct that's now readily available by turning back the clock on lot and narrowly confining it to just a subjective analysis of the officer deprives courts from addressing action. Mr. West, are you arguing that based upon a totality of the circumstances that the district court in fact was wrong to conclude that there was objective fear for safety? Judge, I have been tempted to make that argument to the court, but it's not my appeal. It's the government's appeal. There was no appeal taken from that finding. But in answer to both the jurors' questions today, I think if you have an understanding of the law, which this judge in the district court clearly did, he knew what the parameters were in making his judicial decision, and he inquired into all those things. It's not your appeal, but is that, should that be the approach? Well, that's what I'm getting at. I mean, if you could just string this along for a minute. I mean, if you change the rules, your inquiry is different. So he had one set of rules, and he made a decision based on those rules. Those rules were on the lot. If lot is changed somehow, now he's got to look at this from an objective point of view. And he could well have found, in my opinion, that this was not objectively reasonable, given what he saw on the videos. And he may well have come to that conclusion with an understanding of what the law, if that were the law, because he would have understood the law. And I'm not saying that the district court judge is not capable of bifurcating his review and thinking about that separately, even in the face of lot. But I do think a certain amount of synergy and a certain amount of existing case law influences the decision the district court made. And I think based on the evidence, he may well have come to a different conclusion. I think the evidence supports that different conclusion. This was not objectively reasonable. And defense counsel Blow basically said that he wasn't concerned what the subjective intent of the U.S. was. It's what they actually did that he was arguing. And he said that went beyond the bounds of permitted searches where no warrant existed. So that's what I would say about that, Your Honor. Hopefully that answers your question. Moving into... I just wanted to review for a minute the case law on the other arguments. The safety of the office is being improved by your entreaty to hold that a lot has been overturned. I cannot follow the logic of this argument because first of all, the safety of the officers was found by the district court to be not at risk in terms of their search of this vehicle. So in fact, they were no less safe in this context than they would be if this occurred in a jurisdiction, for example, that didn't have a lot. The government doesn't offer any reason why this court must walk in with circuit courts all over the country. And as I pointed out, I think fairly in my briefing, it's not the case. There's a use of nomenclature. There's a use of word, objectively reasonable, subjectively reasonable, subjective intent. Each of these courts worried about and has defined in its own way, I submit, concern for what actually happened. Counsel, that's time. Thank you, Mr. West. Attorney West, thank you. Please mute your audio and video at this time. Attorney Zuria, please unmute your audio and video and proceed with your two minutes of rebuttal. Thank you. May it please the court, I have several points to make. First, I would call the court's attention in Michigan v. Long to 463 U.S. at pages 1051 and 1052, where the court discusses why the Michigan Supreme Court was wrong in concluding that Long could not injure them because he was effectively under their control during the investigative stop. In those two pages and at note 16, which is part of the accompanying text, the court discusses why the police are not required to take control into account of someone that they haven't arrested as part of their calculus and why they don't have to do more investigation of whether they intend to let him back into the car before they conduct the sweep. The second point I'd like to make is that my brother has suggested that we conceded the point during the argument below, and that's not the case at all. In fact, one of the things that the court did in issuing an amended opinion was to retract its assertion that we had conceded the issue. If you read the record through, you will see that the subjective nature of Lott was never discussed during the hearing. The court might have been thinking it, but he certainly didn't make that clear to counsel, and that me and Lott were not cited at all for the proposition that the two-pronged test hadn't been met. So to say that the issue was clearly presented and raised and discussed before the court issued his opinion is just not true according to the record. Third, the question has arisen why did the government present the subjective intent of the officers during testimony? The government has to establish the reasonableness of the circumstances. The government has to establish that the police were acting in accordance with department policy, which sets up in advance the circumstances that allow a protective sweep of a car to take place. Counsel, that's time. May I finish my sentence? That's what I mean, I'm sorry. Yes, it goes a long way towards establishing credibility of the officers for the officers to describe what they're thinking at the time that they're acting. That's not the same thing as saying that we believed before the decision came out that Lott was correct law. I would ask this court if it is not going to overturn Lott and then if it decides that it disagrees with the lower court's decision on the Michigan versus Long objectivity analysis to remand that for consideration because the court, neither party nor the court, had a chance to litigate it with Lott being abridged. Thank you very much. Thank you, Counselor. Thank you, Judge. That concludes arguments for today. This session of the Honorable United States Court of Appeals is now recessed until the next session of this court. God save the United States of America and this Honorable Court. Counsel, please disconnect from the meeting.